IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DEBORAH ALEXANDER,             )
                               )
         Plaintiff,            )
                               )   Case No. 14 C 3555
     v.                        )
                               )   Magistrate Judge Daniel G. Martin
SUPERVALU INC. d/b/a SAVE-A-LOT, )
                               )
         Defendant.            )

# MEMORANDUM OPINION AND ORDER

This case arises from a slip at a Save-a-Lot store located at 10700 South Halsted Street in Chicago, Illinois. Plaintiff Deborah Alexander ("Alexander") filed a single count complaint against Defendant Supervalu Inc. d/b/a Save-a-Lot alleging that Defendant was negligent under Illinois common law. The parties consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c), and Defendant has moved for summary judgment. Because there is no evidence upon which a reasonable juror could find that Defendant created the dangerous condition leading to the slip or had actual or constructive notice of the dangerous condition, Defendant's Motion for Summary Judgment [41] is granted.

# FACTUAL BACKGROUND

The following facts are deemed admitted and undisputed as Alexander failed to respond to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts.[1] On May 26, 2012,

---

[1] Local Rule 56.1(b)(3)(B) requires the nonmovant to file a "concise response to the movant's statement that shall contain . . . a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1(b)(3)(B). The failure of a nonmoving to comply with the requirements of Local 56.1(b)(3)(B) results in the moving party's facts being admitted. "All material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing part." Local Rule 56.1(b)(3)(C); see also Smith v. Lamz, 321 F.3d 680, 683 (7th Cir. 2003) (noting that the Seventh Circuit has "consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission."). The Court therefore deems admitted all of the facts set forth in Defendant's Local Rule 56.1 Statement of Undisputed Material Facts (Doc.36). Local Rule 56.1(b)(3)(C) also "*requires specifically* that a litigant seeking to oppose a motion for summary judgment file a response that contains a separate 'statement . . . of any additional facts that require

Alexander went to the subject store with Brittany Cribbs ("Cribbs") and Alexander's great-grandson, Darien Mathis. (Doc. 36 at ¶ 9). Alexander testified that approximately 30 minutes passed between the time she entered the store and the time when she slipped on liquid on the store floor. Id. at ¶ 10. Alexander slipped, but did not fall, after she had checked out and paid for her groceries. Id. at ¶ 11. Alexander was pushing her shopping cart at the time she slipped but her view of the floor was not obstructed just prior to the incident. Id. at ¶ 12. The lighting in the store was good and there were no defects with the tile floor. Id. at ¶ 15. At the time of the incident, Alexander was wearing flip-flops. Id. at ¶ 14. Alexander did not see any liquid on the floor before she slipped. Id. at ¶ 13. After she slipped, Alexander saw liquid on the floor that was approximately 12 inches across in a generally roundish shape. Id. at ¶ 16. The liquid was clear, was not dirty, and there were no footprints or cart tracks leading out from it. Id. at ¶ 17.

Alexander does not know how the liquid came to be on the floor and did not see anything fall from somebody's cart or drip from somebody's ice bag. Id. at ¶ 18; Doc. 36-6 at 30:17-20. Alexander does not know how long the liquid was on the floor before she slipped. (Doc. 36 at t ¶ 19). After the occurrence, Alexander spoke with store employees about the occurrence and no one told her that they caused the liquid to be on the floor, no one knew that the liquid was on the floor before she fell, and no one told her where the liquid may have come from. Id. at ¶ 20. There was no wet floor sign near where the liquid was found. Id. at ¶ 21.

Cribbs accompanied Alexander to the subject store on May 26, 2012. Id. at ¶ 22. Cribbs shared a shopping cart with Alexander during the shopping trip and purchased some items for herself during the shopping trip. Id. at ¶¶ 23, 24. Cribbs testified that it was approximately 30-45

---

the denial of summary judgment.'" Cichon v. Exelon Generation Co., LLC, 401 F.3d F.3d 803, 809 (7th Cir. 2005) (quoting Local Rule 56.1). Alexander failed to file a statement of additional facts in opposing Defendant's motion for summary judgment. Notwithstanding Alexander's failure to comply with Local Rule 56.1(b)(3)(C), the Court has reviewed the material Alexander submitted in opposition to summary judgment. (Docs. 48-1– 48-7)/

minutes between the time she and Alexander entered the store and when Alexander slipped. Id. at ¶ 25. Cribbs testified that she witnessed the occurrence and was walking a couple of inches in front of Alexander. Id. at ¶ 26. Cribbs did not see any liquid on the floor before Alexander slipped in the checkout area. Id. at ¶ 27. Cribbs stated she had just turned around to look over her left shoulder when the incident occurred. Id. at ¶ 28. Cribbs testified that she was pushing the shopping cart at the time of the occurrence. Id. at ¶ 29. After Alexander slipped and fell, Cribbs saw a circle of clear liquid on the floor, about the size of a dinner plate. Id. at ¶ 30. Cribbs does not know where the liquid came from and did not see any ice on the floor. Id. at ¶ 31. Cribbs did not hear any employee state that they were aware of the liquid on the floor before the occurrence or that they caused the liquid to be on the floor. Id. at ¶ 32. Cribbs does not know how long the liquid was on the floor before Alexander slipped. Id. at ¶ 33. Cribbs testified that the lighting was good in the area of the occurrence and there were no issues with the flooring. Id. at ¶ 34. The liquid on the floor was clear and was not dirty. Id. at ¶ 35. No liquid was dripping from the ceiling. Id. at ¶ 36. There were no warning cones posted in the area prior to the occurrence. Id. at ¶ 37. Cribbs testified that there was nothing else on the floor, other than the liquid, that could have caused Alexander to slip. Id. at ¶ 38.

Rickey Patterson was working as a cashier at the subject store on the date of Alexander's slip incident. Id. at ¶ 39. Alexander slipped after Paterson had completed his transaction with her as she was walking away from him near the end of the check out lane. Id. at ¶ 40. The incident occurred behind Patterson to his left. Id. at ¶ 41. Patterson had inspected the area where Alexander slipped between five to ten minutes prior to the occurrence and did not find any liquid on the floor. Id. at ¶¶ 42, 43. If Patterson had found liquid on the floor prior to the occurrence, he would have immediately cleaned it up and posted a wet floor cone in the area. Id. at ¶ 44. Patterson testified that there were no defects with the floor tile in the area where the incident occurred. Id. at ¶ 45. No one had notified Patterson that there was liquid on the floor in the area

of Alexander's slip before it occurred. Id. at ¶¶ 47, 48. Patterson testified that if he encounters an item at checkout that seems wet to the touch, he puts the item in a bag before putting it in the customer's shopping cart. Id. at ¶ 49. Finally, Patterson testified that there were no leaking pipes above the area where the incident occurred. Id. at ¶ 50.

## DISCUSSION

The parties agree that Illinois law governs in this diversity action. Alexander's negligence claim is based on premises liability. "In Illinois, businesses owe their invitees a duty to maintain the premises in a reasonably safe condition to avoid injuring them." Reid v. Kohl's Dept. Stores, Inc., 545 F.3d 479, 481 (7th Cir. 2008). "Liability can be imposed when a business's invitee is injured by slipping on a foreign substances on its premises if the invitee establishes that (1) the substance was placed there by the negligence of the business; (2) the business had actual notice of the substance; or (3) the substance was there a sufficient length of time so that, in the exercise of ordinary care, its presence should have been discovered, i.e., the business had constructive notice of the substance." Zuppardi v. Wal-Mart Stores, Inc., 770 F.3d 644, 649 (7th Cir. 2014).

Defendant argues that Alexander cannot present sufficient evidence to create a genuine issue of material fact as to whether the liquid on which she slipped was caused to be there by Defendant, that Defendant knew of its presence, or that the liquid was on the floor long enough to have been discovered by Defendant. Alexander responds that a question of fact exists as to whether the liquid on the floor was caused by the negligence of the Defendant thereby not requiring notice and if notice is required, whether Defendant had constructive notice of the liquid on the floor based on the length of time the liquid had been present on the floor prior to the accident and the store's own policies regarding inspections and sweeps of the floor. The Court addresses each argument in turn below.

**A.      Defendant's Responsibility for Dangerous Condition**

Alexander first argues that she has presented sufficient evidence from which a trier of fact could determine that the liquid was placed on the floor through Defendant's negligence. "To prove that the defendant business, as opposed to a third person, created the dangerous condition, Illinois courts have required the plaintiff to (1) show that the foreign substance was related to defendant's business and (2) 'offer [] some further evidence, direct or circumstantial, however slight, such as the location of the substance or the business practices of the defendant from which it could be inferred that it was more likely that defendant or his servants, rather than a customer, dropped the substance on the premises . . . .'" Zuppardi, 770 F.3d at 649-50 (quoting Donoho v. O'Connell's, Inc., 148 N.E.2d 434, 439 (Ill. S.Ct. 1958)).

In this case, there is no dispute that the clear liquid was related to Defendant's grocery store business. As to the second element, Alexander argues that she has presented sufficient circumstantial evidence that Defendant's negligence caused the liquid to be on the floor, making Defendant's notice of the condition irrelevant. Thompson v. Economy Super Marts, Inc., 581 N.E.2d 885, 888 (Ill. App. 1991) (stating "where the foreign substance is on the premises due to the negligence of the proprietor or his servants, it is not necessary to establish their knowledge, actual or constructive."). The relevant question is "whether the evidence makes it more probable that defendant or his servants" are responsible. Donoho, 148 N.E.2d at 441; Lane v. Hardee's Food Sys., Inc., 184 F.3d 705, 707 (7th Cir. 1999) (stating plaintiff must "produce some evidence that makes it more likely than not that the defendant was responsible for its existence.").

Alexander argues that Defendant's procedure for bagging groceries and Defendant's failure to follow its own ice purchasing and/or bagging policies shows that it is more likely that Defendant was responsible for the liquid on the floor. At the subject store, Defendant's cashier does not bag groceries for the customers. Instead, the cashier scans the items and places them back into a shopping cart near the end of the checkout line. After paying for the items, the customer moves

the shopping cart to another area where the customer bags the groceries.

Alexander theorizes that the liquid she slipped on must have leaked from a bag of ice that had been carried by a customer from the ice machine to the same register where Alexander later checked out. The video of the day of the incident shows that approximately 20 minutes before Alexander slipped, another customer brought two large bags of ice from the ice machine in the front of the store to the same register where Alexander checked out. Patterson placed the two bags of ice in a cart at the front of the register in the same general area where Alexander later slipped. Patterson did not bag the ice bags before placing them in the customer's cart, which Alexander claims was a violation of Defendant's policy of bagging wet items before placing them in a customer's cart. Alexander concludes that Patterson's failure to follow Defendant's bagging policy caused the liquid on the floor. Alexander also points out that she and Cribbs testified that none of the items in Alexander's cart were dripping or leaking. (Doc. 36-6 at 42:20-23; Doc 36-7. at 43:4-7). Cribbs and Patterson testified that nothing was leaking from the ceiling above the area where the liquid was on the floor. (Doc. 36 at ¶¶ 36, 50). Alexander claims that this evidence shows that the liquid "could not have come from any other source" besides one of the ice bags. (Doc. 48 at 10).

There are several problems with Alexander's theory. First, Alexander has failed to show that there is a genuine issue of material fact as to whether an ice bag in the same checkout area 20 minutes before the incident was the source of the liquid on the floor. Alexander and Cribbs did not see the liquid on the floor before Alexander slipped nor did they know how the liquid came to be on the floor. (Doc. 36 at ¶¶ 13, 18, 27, 31).[2] The liquid was clear, was not dirty, and there were no footprints or cart tracks leading from the puddle. Id. at ¶¶ 17, 35. The fact that two ice bags were

---

[2] Alexander relies on testimony from Cribbs when she was asked where the water came from and answered: "I'm not sure. I believe ice, but I'm not sure." (Doc. 36-7 at 19:11-3). Cribbs admitted, however, that she was just "guessing because the ice machine was right there." Id. at 20:12-16. "[G]uesswork and speculation are not enough to avoid summary judgment." Good v. University of Chicago Medical Center, 673 F.3d 670, 675 (7th Cir. 2012).

in a cart in the same checkout area approximately 20 minutes before Alexander slipped does not alone imply that it is more likely that the liquid came from an ice bag because there is absolutely no evidence in the record indicating that either ice bag had a hole and leaked water or ice or otherwise caused the liquid on the floor. The undisputed record suggests that the ice bags purchased by the customer approximately 20 minutes before the incident were not the source of the liquid on the floor. Patterson inspected the area where Alexander slipped between five to ten minutes before the occurrence and did not discover any liquid on the floor. Patterson also testified that at checkout he places items that feel wet or like they might drip in a plastic bag. (Doc. 36-8 at 35:12:-19). Patterson's failure to place the ice bags which he handled into separate plastic bags suggests that ice bags were not leaking or wet.

The surveillance video shows that beginning about 10 minutes before Alexander slipped, several customers with carts containing various items used the same checkout line. The liquid on the floor could have leaked or spilled from a liquid or frozen item purchased at the same checkout area by a different customer. Alexander concedes that other possible sources for the liquid in the checkout area where Alexander slipped exist: "maybe somebody brought some ice over there and didn't notice that it dripped or somebody's cart, some frozen food, maybe it came from their cart." (Doc. 36-6 at 30:11-14). When asked whether she actually saw anything falling from somebody's cart or dripping from somebody's ice bag, Alexander replied, "No." Id. at 30:17-20. Alexander admitted that her possible explanations for the source of the liquid were only a "guess." Id. at 30:21-24. To survive summary judgment, Alexander must provide evidence beyond mere speculation that 20 minutes before the incident, the other customer's ice bag leaked ice or water on the floor where she slipped. Zuppardi, 770 F.3d at 650 (holding plaintiff cannot avoid summary judgment by merely identifying a "potential source" of the spill). To find that the liquid was caused by a leaking ice bag 20 minutes before the occurrence rather than finding that the liquid came from any number of other sources would be pure speculation. Based on these facts, a reasonable jury could not find the

evidence Alexander presents supports a finding that it is more probable that the ice bags caused the liquid upon which Alexander slipped.

The second problem with Alexander's theory is that she has not set forth sufficient evidence to create an inference that Defendant caused the liquid on the floor. No employee told Alexander or Cribbs that they caused the liquid to be on the floor, that they knew where the liquid came from, or that they knew the liquid was on the floor before Alexander slipped. (Doc. 36 at ¶¶ 20, 32). No one had notified Patterson that there was liquid on the floor in the area where Alexander slipped. Id. at ¶¶ 47, 48. Alexander and Cribbs testified that the liquid Alexander slipped on was clear and Defendant does not dispute that it sells water, other clear liquids, ice, and frozen items, but Alexander has not offered any further evidence tending to show that it was more likely that Defendant was responsible for the liquid on the floor. See Zuppardi, 770 F.3d at 650 (concluding that fact that puddle plaintiff slipped on was clear and odorless and it was undisputed that defendant Wal-Mart sells water bottles and other related products did not "tend[] to show that it was more likely that Wal-Mart was responsible for spilling it on the ground.").

Alexander asserts that "Defendant instructed its employees as to store policy regarding the bagging procedure and as to not bringing ice to the register and it was their failure to follow store policy that caused the plaintiff to be injured." (Doc. 48 at 11). This argument is based entirely on the testimony of Patterson, who stated:

> Q: What about like bags of ice? I know there is an ice machine in the front.
>
> A: We usually say, if you want ice, don't come up here first and get your ice. Buy your ice last so, as soon as you get your ice, you can pick it up and walk out the door.
>
> Q: Do they have to come up to the register?
>
> A: No we just got a PLU for the ice.
>
> Q: The ice machine itself does have some carpets around it though, right?

> A: Yes.
>
> Q: And the reason for that?
>
> A: If anything does drip onto the carpets, it's not dripping on the floor. It's dripping onto the carpets. The carpets absorb the water.

(Doc. 36-8 at 35:20-24, 36:1-12). While Patterson's testimony suggests the Defendant preferred customers not to put bags of ice in their carts at the beginning of their shopping trips and that customers need not bring ice bags to the register to buy them because cashiers can use a PLU code to look up the price and allow customers to pick up ice bags on the way out of the store, it does not demonstrate a policy of prohibiting customers from bringing ice to the register. Even if the other customer's bringing of the two ice bags to the same register 20 minutes before the incident indicated that Defendant deviated from its ice purchasing policy, Alexander presents no evidence from which a reasonable juror could conclude that it is more likely than not that the ice bags caused the liquid on the floor. A reasonable jury could therefore not conclude that the customer's bringing of the ice bags to the register demonstrates that Defendant was responsible for liquid on the floor.

Alexander's asserts that Defendant's negligence is also shown by Patterson's failure to bag the ice bags, which amounts to a violation of Defendant's policy of bagging wet items. Again, insufficient evidence exists to infer that the ice bags caused the liquid on the floor. Further, Alexander presents no evidence that Patterson violated Defendant's policy by failing to place the ice bags into separate plastic bags. Patterson testified that if an item at checkout feels wet or like it might drip, he puts it in a plastic bag before he puts the item in the customer's cart. (Doc. 36 at ¶ 49). Patterson further explained that he does not place all frozen items in a plastic bag; only items that feel wet. Patterson Dep. at 35:12:-19. The flaw in Alexander's argument is that there is no evidence that the ice bags were wet to the touch or dripping when Patterson handled them. There is therefore no evidence in the record from which a jury reasonably could find that it is more

likely that Defendant's employee caused the liquid on the floor.

**B.     Defendant's Actual or Constructive Notice of Dangerous Condition**

Alexander presents no facts showing that Defendant had actual knowledge that there was liquid on the floor before she slipped. Alexander argues that she has presented sufficient evidence from which a trier of fact could determine that Defendant had constructive knowledge of the liquid on the floor. "Constructive notice can be established under Illinois law by either presenting evidence that (1) the dangerous condition existed for a sufficient amount of time so that it would have been discovered by the exercise of ordinary care, or (2) the dangerous condition was part of a pattern of conduct or a recurring incident." Zuppardi, 770 F.3d at 651. Where constructive notice is asserted, "[o]f critical importance is whether the substance that caused the accident was there a length of time so that in the exercise of ordinary care its presence should have been discovered." Id. (quoting Tomczak v. Planetsphere, Inc., 735 N.E.2d 662, 668 (Ill. App. 2000)).

Alexander has presented no evidence from which a trier of fact could determine that Defendant had constructive knowledge of the liquid on the floor. "Illinois law recognizes that there is no bright-line rule indicating the requisite time to establish notice, though periods in excess of ten minutes have failed the test." Reid, 545 F.3d at 483. Courts "look to the circumstances of the particular case to determine if the length of time gave rise to notice." Id. "Absent any evidence demonstrating the length of time that the substance was on the floor, a plaintiff cannot establish constructive notice." Id. at 482.

In Reid, the plaintiff was walking from a carpeted section of a Kohl's store to a tiled section of the store when she slipped on a spilled milkshake. Reid, 545 F.3d at 480. The store manager testified that she has passed the aisle where the plaintiff had fallen at most ten minutes prior to the fall and had not seen the spilled pink milkshake. Id. at 481. The store manager further testified that no employees or customers reported the spill prior to the incident. Id. In affirming the district court's grant of summary judgment to the defendant, the Seventh Circuit stated a store's duty to

inspect decreases as customer traffic decreases. Id. at 483. The store manager testified that on the afternoon of the accident, there were very few customers in the store. The Seventh Circuit concluded that under the circumstance of that case, "no reasonable person could conclude that ten minutes was not enough time to give [the defendant] constructive notice of the spilled substance." Id. at 482-83; see also Hresil v. Sears, Roebuck & Co., 403 N.E.2d 678, 680 (Ill. App. 1980) (holding as a matter of law that ten minutes was an insufficient period of time to give constructive notice to defendant self-service store of foreign substance on the floor where store was uncrowded and there was no evidence than any other customer or store employee had discovered or walked through the foreign substance).

In this case, Alexander has no evidence as to how the liquid accumulated on the floor or how long the liquid was on the floor before she slipped. (Doc. 36 at ¶¶ 18, 19, 31, 33). An employee of Defendant was expected to inspect or sweep store areas for debris, liquids, obstructions and any hazards "starting before store opening and every two (2) hours thereafter, or as often as needed throughout the day." (Doc. 48-7). Patterson testified that the store was not crowded at the time of the incident. (Doc. 36-8 at 31:22-24, 32:1). It is undisputed that Patterson inspected the area where Alexander slipped five to ten minutes prior to the occurrence, and he did not find any liquid on the floor. Doc. 36 at ¶¶ 42-43. Based upon Patterson's uncontradicted statement, ten minutes is the outside limit of time the liquid was on the floor. The remaining evidence in this case suggests that the liquid was present on the floor for a very short period of time before Alexander slipped. Despite the liquid being located near the end of a checkout line, the liquid was clear, clean, and there were no footprints or cart tracks leading from the liquid. Id. at ¶¶ 17, 35. The surveillance video shows other customers walking through the same checkout area prior to Alexander's slip and none of the customers appear to have slipped, fallen, or otherwise indicated that there was liquid on the floor. There is no evidence that any other customer or employee had discovered or walked through the liquid. Id. at ¶¶ 47, 48. Based on these

circumstances, no reasonable jury could conclude that ten minutes was enough time to give Defendant constructive notice of the liquid on the floor.

Alexander makes much of the fact that Defendant failed to follow its "Clean Sweep Standard Operating Procedure and Policy," which states that "Clean Sweeps must be performed and documented – starting before store opening and every two (2) hours thereafter, or as often as needed throughout the day." (Doc. 48-7). Alexander points out that Defendant's Clean Sweep Log shows there was no Clean Sweep performed between 5:10 p.m and 9:00 p.m. on the date of the incident. Id. Alexander argues that Defendant's failure creates a question of fact as to whether the liquid on the floor should have been discovered and thus, Defendant should be deemed to have constructive notice of the substance. (Doc. 49 at 14).

As discussed above, the undisputed record reflects that Patterson inspected the area where Alexander slipped between five to ten minutes prior to the incident and did not discover any liquid on the floor. Further, Patterson testified that the store was not crowded at the time of the incident. (Doc. 36-8 at 31:22-24, 32:1). Demanding further monitoring under these circumstances would "require the continuous monitoring and patrolling of a store's safety conditions that [the Seventh Circuit] and Illinois courts have summarily rejected." Zuppardi, 770 F.3d at 652; Peterson v. Wal-Mart Stores, Inc., 241 F.3d 603, 604 (7th Cir. 2001) (stating "the duty of inspection and clean up does not require continuous patrolling of the aisles."); Howard v. Wal-Mart Stores, Inc., 160 F.3d 358, 359 (7th Cir. 1998) (noting a business "is not required to patrol the aisles continuously, but only at reasonable intervals."). Even under Alexander's theory that liquid leaked from an ice bag in the same checkout area approximately 20 minutes before she slipped, sweeps done every two hours would not have uncovered the liquid and prevented this incident. The last sweep done prior to the occurrence was completed at 5:10 pm. (Doc. 48-7). If Defendant had done a sweep two hours later at 7:10 p.m., such sweep would have occurred before the transaction where the bags of ice were put in the cart, seen at approximately 7:29 p.m. on the video. Similarly, the liquid would not have

been discovered even if the store had done sweeps every two hours after the first sweep done at 9 a.m.[3]

**CONCLUSION**

For these reasons, Defendant Supervalu Inc.'s Motion for Summary Judgment [41] is granted. Defendant's Motion to Strike and Bar Expert Opinion Testimony [32] is denied as moot. The Clerk is directed to enter judgment in favor of Defendant Supervalu Inc. d/b/a Save-a-Lot and against Plaintiff Deborah Alexander. Civil case terminated.

**E N T E R :**

*[signature: Daniel G. Martin]*

**Daniel G. Martin
United States Magistrate Judge**

**Dated:  November 20, 2015**

---

[3] As to a pattern of conduct, Alexander asserts that Patterson "stated that there had been incidents in the past, prior to Ms. Alexander's accident, where there were problems with items leaking though the shopping carts onto the floor at the end of the register." (Doc. 48 at 7-8). Patterson testified that between 2006 and the date of the incident on May 26, 2012, he "very seldom" encountered items leaking through the cart and dripping on the floor at the end of the register. (Doc. 36-8 at 34:15-22). Patterson further testified that he could not recall any slip and fall incident at the store between 2006 and January 2015. Id. at 36:14-24, 37:1-5. Patterson's testimony does not establish that Alexander's slip is part of a pattern of conduct or recurring incident which would constitute constructive notice of a dangerous condition.